THE DENTE LAW FIRM
MATTHEW S. DENTE (SB# 241547)
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 550-3475
Facsimile: (619) 342-9668
matt@dentelaw.com

ROBBINS ARROYO LLP
BRIAN J. ROBBINS (SB# 190264)
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
brobbins@robbinsarroyo.com

MESERVY LAW, P.C.
LONDON D. MESERVY (SB# 216654)
550 West C Street, Suite 1950
San Diego, CA 92101
Telephone: (858) 779-1276
Facsimile: (866) 231-8132
london@meservylawpc.com

Attorneys for Plaintiff Marcus Gillespie
and for Members of the Class and Subclasses

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS GILLESPIE, Individually and on Behalf of Other Members of the Public Similarly Situated,<br><br>              Plaintiff,<br><br>       v.<br><br>TIME WARNER ENTERTAINMENT-ADVANCE/NEWHOUSE PARTNERSHIP and DOES 1-10, Inclusive,<br><br>              Defendant. | Case No. 12-CV-01214-W-BGS<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR AWARD OF ATTORNEYS' FEES AND COSTS, CLASS REPRESENTATIVE'S ENHANCEMENT PAYMENT, AND PAYMENT TO SETTLEMENT ADMINISTRATOR<br><br>Judge: Hon. Anthony J. Battaglia<br>Courtroom: 3B<br>Hearing Date: November 7, 2013<br>Hearing Time: 1:30 p.m. |

# **TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ........................................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ................................... 1

    A.     Summary of Settlement Terms ...................................................... 4

        1.  Class Notice .......................................................................... 7

        2.  Class Participation in the Settlement ................................... 8

III. FINAL COURT APPROVAL OF THE SETTLEMENT IS
     APPROPRIATE ...................................................................................... 8

    A.     The Three-Step Class Action Settlement Approval Process ................... 8

    B.     The Settlement Is Fair, Reasonable, and Adequate ................................. 10

        1.   The Terms of the Settlement Disclose No Grounds to
            Doubt its Fairness ................................................................. 11

        2.   The Parties Engaged in Extensive Investigation of
            Plaintiff's and the Class' Claims, Which Favors
            Final Approval ...................................................................... 12

        3.   Liability Is Vigorously Contested, and the Settlement
            Provides Reasonable Compensation for the Class
            Members' Alleged Injuries .................................................... 12

        4.   The Complexity, Expense, and Likely Duration of
            Continued Litigation in the Absence of Settlement
            Favors Final Approval .......................................................... 13

        5.   The Experience and Views of Class Counsel Favor
            Final Approval ...................................................................... 13

        6.   Class Members' Positive Reaction to the Settlement
            Favors Final Approval .......................................................... 13

        7.   This Court Should Approve the PAGA Penalty
            Portion of the Settlement ...................................................... 13

-i-

IV. CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES AWARD IS FAIR AND REASONABLE AND SHOULD BE APPROVED .................... 14

    A.   The Results Achieved ........................................................16

    B.   The Risks of Litigation ......................................................17

    C.   The Skill Required and the Quality of the Work .........................17

    D.   The Contingent Nature of the Fee.......................................18

    E.   Awards Made in Similar Cases.........................................19

    F.   No Class Member Objected to the Attorneys' Fee Award .......................19

V. CLASS COUNSEL'S REQUESTED REPAYMENT OF COSTS IS FAIR AND  REASONABLE AND SHOULD BE APPROVED................................ 20

VI. THE REQUESTED CLASS REPRESENTATIVE ENHANCEMENT AWARD IS FAIR AND REASONABLE AND SHOULD BE FINALLY APPROVED ................................................................ 20

VII. THE COURT SHOULD APPROVE THE PAYMENT TO CPT .................. 22

VIII. CONCLUSION............................................................ 23

- ii -

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,*
    421 U.S. 240 (1975) ........................................................................ 14

*Birch v. Office Depot Inc.,*
    No. 06-cv-01690- ......................................................................... 19

*Blum v. Stenson,*
    465 U.S. 886 (1984) ........................................................................ 15

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ........................................................................ 14

*Brinker Restaurant Corporation v. Superior Court,*
    53 Cal. 4th 1004 (2012) .................................................................. 17

*Camden I Condo. Ass'n, Inc. v. Dunkle,*
    946 F.2d 768 (11th Cir. 1991) ........................................................ 15

*Cent. R.R. & Banking Co. v. Pettus,*
    113 U.S. 116 (1885) ........................................................................ 15

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) .......................................................... 8

*De Stefan v. Frito-Lay, Inc.,*
    No. 10-cv-0112-DOC-MLG (C.D. Cal. Oct. 29, 2012) .................................. 19

*Fla. v. Dunne,*
    915 F.2d 542 (9th Cir. 1990) ..................................................... 15, 16

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ........................................................ 11

*Ingalls v. Hallmark Mktg. Corp.,*
    No. 08-CV-04342-VBF-E (C.D. Cal. Oct. 16, 2009) ....................................... 19

*In re Activision Sec. Litig.,*
    723 F. Supp. 1373 (N.D. Cal. 1989) ................................................ 16

*In re Mercury Interactive Corporation Securities*,
    618 F.3d 988 (9th Cir. 2010) .................................................................. 14

*In re Oracle Sec. Litig.*,
    131 F.R.D. 688 (N.D. Cal. 1990) ........................................................ 16

*In re Pac. Enter. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................... 15, 16, 19

*In re Traffic Exec. Ass'n E. R.R.*,
    627 F.2d 631 (2d Cir. 1980) ...................................................................9

*In re United Energy Corp. Sec. Solar Power Modules Tax Shelter Inv. Litig.*,
    No. CV 87-3962KN(GX), 1989 WL 73211 (C.D. Cal. 1989) ........................ 20

*Martin v. AmeriPride Services Inc.*,
    No. 08CV440-MMA (JMA), 2011 WL 2313604 (S.D. Cal. June 9, 2011) ...... 19

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) ......................................................................... 14

*Morris v. Lifescan, Inc.*,
    54 Fed. App'x. 663 (9th Cir. 2003) ........................................... 15, 16, 19

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ..................................................... 14, 15

*Rippee v. Boston Mkt. Corp.*,
    No. 05-cv-1359-BTM-JMA (S.D. Cal. Oct. 10, 2006) ................................ 19

*Singer v. Becton Dickinson & Co.*,
    No. 08-CV-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010) ...... 19

*Sprague v. Ticonic Nat'l Bank*,
    307 U.S. 161 (1939) ......................................................................... 15

*Trustees v. Greenough*,
    105 U.S. 527 (1881) ......................................................................... 15

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir.1976)..................................................................8

*Vasquez v. Coast Valley Roofing, Inc.*,
    266 F.R.D. 482 (E.D. Cal. 2010)..................................................................... 19

*Vizcaino v. Microsoft Corporation*,
    290 F.3d 1043 (9th Cir. 2002)....................................................................... 16

*Williams v. MGM-Pathe Commc'ns Co.*,
    129 F.3d 1026 (9th Cir. 1997)....................................................................... 15

Case No. 12-CV-01214-W-BGS
MEMORANDUM OF POINTS AND AUTHORITIES

**Rules**

Fed. R. Civ. P. 23(e) ............................................................................ 8, 10

**Statutes**

Cal. Lab. Code
     § 2698 .................................................................................... 2
     § 203 ...................................................................................... 5
     § 2699(l) ................................................................................ 13

**Other Authorities**

Newberg on Class Actions
     § 11.41 ................................................................................... 8
     § 11.2 .................................................................................... 9
     § 11.25 ................................................................................... 9
     § 2.19 .................................................................................. 20

Manual for Complex Litigation (Fourth) § 21.63 ................................... 9

## I.    INTRODUCTION

Plaintiff Marcus Gillespie seeks final approval of the Joint Stipulation of Class Settlement and Release reached with defendant Time Warner Entertainment-Advance/Newhouse Partnership (the "Motion").[1]   In addition, Plaintiff moves for approval of the Settlement Administrator's fees, an award of attorneys' fees and costs, and approval of the enhancement award to Plaintiff for his service as class representative.  Plaintiff's Motion is unopposed.

The Settlement is fair, reasonable, and adequate and satisfies all of the criteria for final approval and deserves approval.  Accordingly, Plaintiff respectfully requests that the Court issue an order (i) granting final approval of the Settlement; (ii) approving distribution of the settlement funds to Plaintiff, Participating Class Members, and the California Labor & Workforce Development Agency; (iii) approving Class Counsel's request for an award of $450,000.00 as an award of attorneys' fees (27.5% of the Maximum Settlement Amount) and $14,117.51 in costs; (iv) approving the request for a class representative incentive award payment of $7,500.00 (0.46% of the Maximum Settlement Amount) to Plaintiff; and (v) approving payment of up to $15,500.00 to CPT Group, Inc. ("CPT") for settlement administration fees and costs.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On April 19, 2012, Plaintiff filed a complaint in the California Superior Court, County of San Diego, alleging that Time Warner Cable, Inc. violated the California Labor Code by (i) failing to pay all wages, including minimum wages in violation of

---

[1] All capitalized terms contained herein shall have the same meanings and/or definitions as set forth in the Joint Stipulation of Class Settlement and Release Between Plaintiff and Defendant ("Settlement") dated March 21, 2013 and attached as Exhibit 1 to the Declaration of London D. Meservy in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Application for Award of Attorneys' Fees and Costs, Class Representative's Enhancement Payment, and Payment Settlement Administrator ("Meservy Decl.").

California law; (ii) failing to pay overtime wages in accordance with California law; (iii) failing to provide meal periods in accordance with California law; (iv) failing to provide rest breaks in accordance with California law; (v) failing to pay wages due on termination in violation of California law; and (vi) failing to provide accurate itemized wage statements in violation of California law (the "Complaint").  As a result of these violations, Plaintiff alleges Defendant engaged in unfair competition in violation of California law.  On May 17, 2012, Time Warner Cable, Inc. timely answered Plaintiff's Complaint, denying Plaintiff's allegations, and on May 18, 2012, removed the action to this Court under the Class Action Fairness Act of 2005 ("CAFA").  On June 6, 2012, Plaintiff provided notice to the LWDA and Defendant that he intended to pursue claims for civil penalties against Defendant under the California Labor Code Private Attorneys General Act of 2004, and California Labor Code § 2698, *et seq*. ("PAGA").  On June 19, 2012, the Parties filed a Joint Motion to Substitute Party Defendant TWEAN for Time Warner Cable, Inc. as the proper defendant in the Litigation (Dkt. No. 4).  The Court granted the Parties' motion on June 21, 2012 (Dkt. No. 5).  On June 28, 2012, Plaintiff filed his First Amended Complaint, for the sole purpose of substituting TWEAN in as defendant (Dkt. No. 10).  Defendant answered Plaintiff's First Amended Complaint on August 9, 2012, denying Plaintiff's allegations (Dkt. No. 15). On August 31, 2012, Plaintiff filed his Unopposed Motion for Leave to File Second Amended Complaint to add PAGA claims against Defendant (Dkt. No. 17).  The Court granted Plaintiff's motion and Defendant answered Plaintiff's Second Amended Complaint on October 10, 2012 (Dkt. No. 22).

Counsel for all Parties extensively investigated Plaintiff's claims through both formal and informal discovery, enabling them to fully evaluate the strengths and weaknesses of the claims and defenses raised by each side.  The Parties provided initial disclosures.  The Parties also exchanged dozens of special interrogatories and well over one hundred requests for production of documents.  For his part, Plaintiff

produced hundreds of pages of documents and over fifty pages of detailed responses to Defendant's written discovery requests.  Plaintiff also sat for a full-day deposition. Defendant also produced thousands of pages of documents and data relating to the claims of Plaintiff and the putative Class, as well seventy pages of responses to Plaintiff's written discovery requests.  Plaintiff took multiple depositions throughout the prosecution of this case, including multiple depositions of Defendant's Rule 30(b)(6) corporate representatives on forty topics relevant to the claims at issue. Plaintiff also took the deposition of an individual representative of Defendant. Defendant also provided information regarding the size of the Class, their locations of work, and voluminous pay and time records for a sampling of putative Class Members. Meservy Decl., ¶7.

After conducting extensive discovery, the Parties decided to attempt a resolution of this matter.  Meservy Decl., ¶8.  On January 24, 2013, the Parties attended a full-day mediation with a well-respected class action mediator, former California Court of Appeal Justice John K. Trotter of JAMS.  Prior to the mediation, the Parties submitted extensive mediation briefs, evidence, and legal authorities to the mediator.  After serious, intense, and protracted negotiations, the Parties reached a settlement, the terms of which were memorialized in the Settlement now before this Court for final approval. Meservy Decl., ¶9.

On May 30, 2013, this Court granted preliminary approval of the Settlement (the "Preliminary Approval Order") (Dkt. No. 41).  On June 13, 2013, the Court-appointed Settlement Administrator, CPT, mailed the Court-approved Class Notice to 382 Class Members in accordance with the Court's May 30, 2013 Preliminary Approval Order.

Following the CPT's delivery of Class Notice and Claim Forms to the Class Members, the Parties determined that, due to inadvertent errors by Defendant, there were an additional 136 individuals who should have been identified as Class Members

- 3 -

in the Settlement and who should have received the Class Notice and Claims Forms. The Parties agreed that the Additional Class Members should receive treatment identical to the original Class Members, but that the payment to the Additional Class Members should not reduce the payments to the original Class Members.  Therefore, and in accordance with paragraph 73 of the Settlement, the Parties modified and amended the Settlement to include these Additional Class Members in the Settlement and increase the Maximum Settlement Amount by up to $280,283.09.[2]   The Parties then filed a Joint Motion for Modification of Preliminary Approval Order (Dkt. No. 44).  On August 5, 2013, this Court issued an Order Modifying Preliminary Approval Order (the "Modified Order") (Dkt. No. 47).  On June 13, 2013 and August 9, 2013, the Court-appointed Settlement Administrator, CPT, mailed the Court-approved Class Notice to 514 Class Members in accordance with the Court's May 30, 2013 and August 5, 2013 Orders. *See* Declaration of Tim Cunningham in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement ("Cunningham Decl."), ¶¶7, 10.  No Class Members objected to, or opted out of, the Settlement. Cunningham Decl., ¶¶15, 18.

### A.    Summary of Settlement Terms

The Addendum provides that Defendant will pay up to One Million Six Hundred Thirty Two Thousand Eight Hundred Eighty Three and 09/100 ($1,632,883.09), the Maximum Settlement Amount, to settle the claims of Plaintiff and the Class, consisting of all persons who have been employed by Defendant as a Field Service Technician at Defendant's California locations at any point in time from April 19, 2008 through the date of preliminary approval of the Settlement.  Settlement, ¶3.

In addition to the distributions to Participating Class Members, the Maximum

---

[2] A copy of the fully-executed Addendum to Joint Stipulation of Class Settlement and Release ("Addendum") is attached as Exhibit 2 to the Meservy Decl.

Settlement Amount will be used to pay: (i) Plaintiff's class representative payment (which Plaintiff now requests to be Seven Thousand Five Hundred Dollars ($7,500.00)); (ii) Class Counsel's attorneys' fees (which they now seek in the amount Four Hundred and Fifty Thousand Dollars ($450,000.00) — twenty-seven and one-half percent (27.5%) of the Maximum Settlement Amount); (iii) reimbursement of Class Counsel's costs, which Class Counsel now seeks in the amount of $14,117.51; (iv) a Ten Thousand Dollar ($10,000.00) payment to the LWDA ("LWDA Payment"); and (v) Settlement Administrator Fees up to Fifteen Thousand Five Hundred Dollars ($15,500.00).  Settlement, ¶38(a)-(e).

After deducting: (i) the Court-approved Class Counsel's fees and costs; (ii) the Court-approved Class Representative Payment; (iii) the payment to the LWDA; and (iv) the claims administration expenses from the Maximum Settlement Amount, the remaining balance available for distribution (the "Net Aggregate Settlement Amount") shall be for distribution to those Class Members who do not opt out of the Settlement and who file valid and timely claims.

Each Class Member's share of the Net Aggregate Settlement Amount will be determined as described in this Paragraph.  First, Each Participating Class Member whose employment was terminated, whether voluntarily or involuntarily, between April 19, 2009 and the date of Preliminary Approval shall be paid One Hundred Dollars ($100.00) from the Maximum Settlement Amount for waiting time penalties under California Labor Code § 203 ("Terminated Class Member Payment").  The total of all Terminated Class Member Payments shall be referred to as the "Aggregate Terminated Class Member Payments." Settlement, ¶38(f)(i).  Next, each Participating Class Member will be paid based on the number of Compensable Workweeks worked during the Class Period (April 19, 2008 through preliminary approval).  The dollars paid per Compensable Workweeks for all Compensable Workweeks during the Class Period will be calculated by dividing the Net Aggregate Settlement Amount, less the

- 5 -

Aggregate Terminated Class Member Payments, by the total number of Compensable Workweeks worked by all Class Members.  The dollars-per-Compensable Workweek sum will then be multiplied by the number of Compensable Workweeks worked by each Class Member during the Class Period to determine the distribution to be made to that Class Member (the "Compensable Workweek Benefit Amount").   Each Participating Class Member's gross settlement amount shall be calculated by adding his or her Terminated Class Member Payment, if any, to his or her Compensable Workweek Benefit Amount (the "Final Gross Settlement Award").  Any monies in the Net Aggregate Settlement Amount that are not claimed, will be redistributed to Class Members on a pro-rata basis such that a minimum of 50% of the Net Aggregate Settlement Amount is distributed to the Class Members.  Settlement, ¶38(f)(i)-(v).

As part of the Settlement, Plaintiff and those Class Members who do not opt out of the Settlement will fully release and discharge Defendant and Defendant's past, present, and future partners, directors, officers, employees, agents, servants, registered representatives, administrators, predecessors, successors, fiduciaries, trustees, assigns, attorneys, and agents (collectively referred to as the "Releasees") from any and all claims, causes of action, damages, liabilities, debts, penalties, obligations, and demands, including, but not limited to, any and all claims for attorneys' fees, costs, interest, and statutory and civil penalties that arose during the Class Period based on the facts that were asserted in the Litigation, including all known or unknown claims that could be asserted in the Litigation based on those facts, and any and all claims that could be asserted related to Defendant's alleged failure to: (a) pay Field Service Technicians wages, minimum wage, or overtime compensation; (b) properly calculate Field Service Technicians' "regular rate" for purposes of computing overtime compensation; (c) provide Field Service Technicians with accurate, itemized wage statements; (d) provide Field Service Technicians with legally required meal and rest breaks (or missed break premiums in lieu of same); (e) pay wages due to Field Service

1    Technicians at the time of termination of employment; and/or (f) any other claims

2    arising under the California Labor Code, applicable California Industrial Welfare

3    Commission Wage Orders, the California Business and Professions Code, or the

4    Private Attorneys General Act that were or could have been alleged based on the

5    causes of action or facts alleged in the Litigation that arose during the Class Members'

6    employment as Field Service Technicians for Defendant.  Settlement, ¶53.

7         The release is narrowly tailored to encompass only those claims that are

8    specifically alleged in, or reasonably encompassed by, Plaintiff's Second Amended

9    Complaint (Dkt. No. 17-3).  Meservy Decl., ¶15.

10             **1.    Class Notice**

11        On June 11, 2013 and August 5, 2013, Defendant provided CPT with a mailing

12   list containing the Class Members' names, last known addresses, social security

13   numbers, and employment information (the "Class List").  Cunningham Decl., ¶¶4, 9.

14   The Class List contained data for 514 Class Members.  *Id.*, ¶5.  CPT processed and

15   updated the mailing addresses contained in the Class List utilizing the National

16   Change of Address ("NCOA") database maintained by the U.S. Postal Service.  *Id.*,

17   ¶6.  If any Class Member had filed a U.S. Postal Service change of address request,

18   CPT mailed the Class Notice to the address listed with the NCOA.  *Id.*, ¶13

19        Pursuant to this Court's Preliminary Approval Order and Modified Order, on

20   June 13, 2013 and August 9, 2013, CPT mailed the Court-approved Class Notice—

21   which included the terms relating to attorneys' fees and costs and Plaintiff's class

22   representative enhancement—and Claim Form to the 514 Class Members.

23   Cunningham Decl., ¶¶7, 10.

24        The U.S. Postal Service returned two Class Notices to CPT with forwarding

25   address information.  Cunningham Decl., ¶13.  CPT promptly remailed these two

26   Class Notices with the updated addresses provided.  *Id.*  Thirty-two Class Notices

27   were returned to CPT as undeliverable without forwarding address information.  *Id.*,

28

- 7 -

¶14.  CPT performed an advanced address search for all Class Notices that were returned without forwarding address information.  *Id.*  CPT was able to obtain thirty-one updated addresses and promptly re-mailed Class Notices to these new addresses. *Id.*

## 2.    Class Participation in the Settlement

Three Hundred Twenty Seven (327) Class Members (63.62% of the Class) submitted valid Claim Forms.  Cunningham Decl., ¶22.  The 327 Class Members claimed 79.53% of the total eligible work weeks available under the Settlement (approximately 60,944 work weeks out of a total of 76,631 possible work weeks) and the corresponding 79.29% of the settlement funds available to Class Members (approximately $900,286.85).  *Id.*  Not a single Class Member objected to, or opted out of, the Settlement.  Cunningham Decl., ¶¶15, 18.

## III.    FINAL COURT APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A.    The Three-Step Class Action Settlement Approval Process

A class action may not be dismissed, compromised or settled without the approval of the Court.  Fed. R. Civ. P. 23(e).  Before granting final approval of the Settlement, the Court must find that it is fair, reasonable, and adequate.  *Id.*

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir.1976); H. Newberg & A. Conte, 4 Newberg on Class Actions § 11.41, at pp. 87-88 (4th ed. 2002) (and cases cited therein).[3]  Judicial proceedings have led to a defined procedure and specific criteria for settlement approval in class action settlements, as described in

---

[3] Here, as throughout, all emphasis is added and citations and footnotes are omitted unless otherwise noted.

the Manual for Complex Litigation (Fourth) (the "Manual") § 21.63 (2006).  The Manual's settlement approval procedure describes the following steps:

1.      Preliminary approval of the proposed settlement at an informal hearing;

2.      Dissemination of mailed and/or published notice of the settlement to all affected class members; and

3.      A final settlement approval hearing, at which class members may be heard regarding the settlement, and evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, commonly used by courts and endorsed by the leading class action commentator, Professor Newberg, safeguards Class Members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. *See* Newberg & Conte, *supra*, at § 11.2.  With this Motion, Plaintiff requests that the Court take the final step in the settlement approval process and grant final approval of the Settlement.

The first two steps of this process are already complete.  The first step was completed on May 30, 2013 and on August 5, 2013, when this Court granted preliminary approval of the Settlement.  In doing so, this Court determined that the Settlement was within the range of possible final approval and that notice to the Class Members of the Settlement's terms and of the scheduling of the formal fairness hearing should be distributed.  *See, e.g., In re Traffic Exec. Ass'n E. R.R.*, 627 F.2d 631, 633-34 (2d Cir. 1980); Newberg & Conte, *supra*, at § 11.25.

The second step in the class action settlement approval process, the dissemination of the notice of settlement, is complete as well.  In accordance with the Court's Preliminary Approval Order, the Parties worked with CPT to implement the Court-approved notice program, which employed the best practicable means to disseminate to all Class Members notices of the Settlement's terms and of the date and time of the final approval hearing.  Fed. R. Civ. P. 23(e).

The third and last step in the class action settlement approval process is the final approval hearing, scheduled for November 7, 2013, at which this Court shall determine whether the Settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). At the conclusion of the final approval hearing, this Court will decide whether to grant final approval of the Settlement and whether to enter a final order and judgment.

### B.   The Settlement Is Fair, Reasonable, and Adequate

Pursuant to the Settlement, Defendant will pay up to $1,632,883.09 to settle this matter. The parties negotiated the Settlement in good faith and at arms' length, following an intensive investigation of the factual and legal claims over a period of almost two years, and a full-day mediation session, and ultimately agreed on a settlement. The parties engaged in extensive discovery, both formal and informal, with one another before arriving at a settlement, and fully appraised each other of their respective factual contentions, legal theories, and defenses. Meserve Decl., ¶¶6-7, 16-17. Class Counsel are experienced in class action wage-and-hour litigation. *Id.*; Declaration of Matthew S. Dente in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Application for Award of Attorneys' Fees and Costs, Class Representative's Enhancement Payment, and Payment to Settlement Administrator ("Dente Decl."), ¶¶5-6, 15-16; Declaration of Brian J. Robbins in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Application for Award of Attorneys' Fees and Costs, Class Representative's Enhancement Payment, and Payment to Settlement Administrator ("Robbins Decl."), ¶¶4-5, 14-15. Defendant's counsel are also experienced in defending class actions of this type.

Furthermore, courts must give "proper deference to the private consensual decision of the parties," since "'the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to

- 10 -

the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."'  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (citation omitted).  As shown below, the Settlement is fair, reasonable, and adequate and should be granted final approval.

### 1.  The Terms of the Settlement Disclose No Grounds to Doubt its Fairness

The Settlement provides a significant recovery to the Class and clearly falls within the range of reasonableness.  A thorough review of the terms of the Settlement, particularly the $1,632,883.09 Maximum Settlement Amount, gives rise to no doubts as to its fairness.  The Settlement provides for substantial and immediate benefits payable to Class Members.  The Settlement is enhanced by the fact that there are no non-cash benefits to the Settlement such as paid time off or coupons.  The amounts for which Class Members are eligible exceed settlements of similar claims and are also commensurate with the value of the claims released adjusted for risk.  The amounts to be paid are not nominal or symbolic.  Rather, these are substantial benefits in relation to the claimed harm suffered by the Class.  Moreover, the LWDA will receive a sizable payment as its share of the Settlement attributable to civil penalties under the PAGA.  The monetary recoveries for both the Class and the State of California exemplify the fairness, reasonableness, and adequacy of the Settlement and justify its final approval.

Despite the fairness of the Settlement's terms, any Class Member, upon reviewing the Class Notice, who was unsatisfied with its terms had the right to request to be excluded from (i.e., opt out of) the Settlement, in which case the Class Member would retain any of the released claims he or she may have against Defendant. Settlement, ¶46.  Moreover, Class Members who did not opt out had the opportunity, upon providing proper notice to the parties and the Court, to attend the final fairness

- 11 -

hearing for the purpose of objecting to one or more of the Settlement's terms. Settlement, ¶47.

### 2. The Parties Engaged in Extensive Investigation of Plaintiff's and the Class' Claims, Which Favors Final Approval

Class Counsel and Defendant's counsel conducted an intensive investigation into Plaintiff's and the Class' claims. The parties engaged in significant formal and informal discovery, including written discovery, several depositions, exchanging a considerable amount of information and fully appraising each other of their respective factual contentions, legal theories, and defenses. Meservy Decl., ¶¶6-7, 16-17. The Parties negotiated the Settlement with ample knowledge of the strengths and weaknesses of Plaintiff's claims and Defendant's defenses and the monetary amounts necessary to compensate Class Members taking into account both Parties' strengths, weaknesses, and the risks of going forward with the Litigation. Meservy Decl., ¶7.

### 3. Liability Is Vigorously Contested, and the Settlement Provides Reasonable Compensation for the Class Members' Alleged Injuries

Of particular relevance to the reasonableness of the Settlement is the fact that Defendant has legal and factual grounds available to it for defending this action. From the outset of this Litigation, Defendant denied each of Plaintiff's allegations as they apply to Plaintiff and each Class Member. Considering Defendant's defenses, specifically, that it paid Plaintiff and Class Members for all compensable travel, properly calculated overtime rates to account for overtime on bonuses, and did not interfere with meal and rest entitlements as those entitlements are defined by recent case law, there was a prospect that the Class may not have obtained certification or, even with certification, would have not been able to recover any damages at all. Meservy Decl., ¶18. Notwithstanding Defendant's arguments, the Settlement commits Defendant to pay $1,632,883.09 to compensate Plaintiff and Class Members for these claims. *Id.*

### 4. The Complexity, Expense, and Likely Duration of Continued Litigation in the Absence of Settlement Favors Final Approval

Employment class action cases are expensive and time consuming to prosecute. Due to the size of the Class and the nature of the claims, continued litigation of this action against Defendant would likely be complex and expensive. The Settlement avoids the need for a contested class certification motion that would be time consuming and costly for Plaintiff to file, Defendant to oppose, and the Court to decide. The Settlement also avoids a lengthy trial or trials that likely would have involved testimony by numerous witnesses and experts.

### 5. The Experience and Views of Class Counsel Favor Final Approval

Class Counsel supports the Settlement as fair, reasonable, adequate, and in the best interests of the Class. Class Counsel believes this Settlement to be an excellent result for Class Members. Meservy Decl., ¶26; Dente Decl., ¶25; Robbins Decl., ¶24.

### 6. Class Members' Positive Reaction to the Settlement Favors Final Approval

Of great importance is the fact that not a single Class Member objected to, or requested to be excluded from, the Settlement. Cunningham Decl., ¶¶15, 18. Further, 63.62% of the Class Members claimed 79.29% of the settlement funds available to Class Members (approximately $900,286.85). *Id.*, ¶22. The Court should construe the overwhelming non-opposition to the Settlement as a strong indication of Class Members' support for the Settlement as being fair, reasonable, and adequate and thus deserving of final approval.

### 7. This Court Should Approve the PAGA Penalty Portion of the Settlement

PAGA requires that this Court review and approve the settlement of penalties under PAGA. Cal. Lab. Code § 2699(l). As a part of the Settlement, Defendant agreed to pay $10,000.00 to the LWDA as its share of the Settlement attributable to civil penalties under the PAGA. Settlement, ¶38(c). For all of the reasons stated above, the Settlement is fair, reasonable, and adequate and should be approved. The PAGA portion of the Settlement should likewise be approved.

- 13 -

The Settlement is fair, reasonable, and adequate because it provides substantial benefits to Class Members and the general public.  The fairness, reasonableness, and adequacy of the Settlement is illustrated by the fact that not one of the 514 Class Members objected to the Settlement.  Cunningham Decl., ¶15.  In addition, the LWDA will receive $10,000.00 as its share of the Settlement attributable to civil penalties under PAGA.  Accordingly, final approval of the Settlement is appropriate.

## IV.    CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES AWARD IS FAIR AND REASONABLE AND SHOULD BE APPROVED

In connection with the Settlement, Class Counsel request an award of attorneys' fees of $450,000.00 which equals 27.5% of the $1,632,883.09 Maximum Settlement Amount.[4]

The U.S. Supreme Court consistently has recognized that "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970).  The common fund doctrine is a well-recognized exception to the general American rule that a litigant must bear his own attorney's fees.  *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257-58 (1975).  The Ninth Circuit has held that the common fund doctrine applies when: (i) the class of beneficiaries is sufficiently identifiable; (ii) the benefits can be accurately traced; and (iii) the fee can be shifted with some exactitude to those benefiting.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) ("*Paul*").  These criteria are "easily met" when "'each member of a certified class has an undisputed and mathematically ascertainable

---

[4] On July 10, 2013, Plaintiff filed an Unopposed Motion for Attorneys' Fees and Costs (Dkt. No. 43) during the Claim Period in order to ensure that all Class Members had the opportunity, should they so choose, to review the basis for Class Counsel's claim for attorneys' fees and costs during the time period in which they may object to the Settlement as required by the Ninth Circuit Court of Appeals in *In re Mercury Interactive Corporation Securities*, 618 F.3d 988 (9th Cir. 2010).

claim to part of a lump-sum [settlement] recovered on his behalf.'"  *Id*. at 271, citing *Van Gemert*, 444 U.S. at 479.

Under the three factors set forth in *Paul*, the common fund doctrine applies here. First, the class of beneficiaries is identifiable.  Defendant identified each of the Class Members (514) by examining its employment databases.  Second, the benefits consist of monetary payments to the Class Members and, therefore, can be easily and accurately traced.  Third, the fee can be shifted with exactitude because Class Counsel are claiming a specific, lump-sum percentage of the total settlement amount conferred upon Class Members.

Under the common fund doctrine, courts typically award attorney's fees based on a percentage of the total settlement.  *See Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorney's fee award of 33% of the recovery); *Morris v. Lifescan, Inc.*, 54 Fed. App'x. 663 (9th Cir. 2003) (affirming attorney's fee award of 33% of the recovery).  Every Supreme Court case that has considered the award of attorney's fees under the common fund doctrine has determined those fees as a percentage of the recovery.  *See, e.g., Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) citing *Blum v. Stenson*, 465 U.S. 886 (1984) (noting that the percentage of recovery method is the appropriate method to award attorney's fees in common fund cases); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885); *Trustees v. Greenough*, 105 U.S. 527, 532 (1881).

In the Ninth Circuit, district courts have the discretion to use either the percentage of the fund or the lodestar method to calculate attorney's fees.  *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997).  Yet the Ninth Circuit has recognized a "ground swell of support for mandating a percentage-of-the-fund approach in common fund cases...."  *Florida*, 915 F.2d at 545; *see also Pac. Enter.*, 47 F.3d at 378-79, (affirming attorney's fee of 33% of the recovery); *Morris*,

54 Fed. App'x. at 663 (affirming fee award of 33% of the recovery). District courts in California have held that the percentage of the fund method is far preferable to the lodestar method because: (i) it aligns the interests of Class Counsel and the Class; (ii) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (iii) it reduces the demands on judicial resources. *In re Oracle Sec. Litig.*, 131 F.R.D. 688, 689 (N.D. Cal. 1990); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989).[5]

In this case, the proposed attorneys' fees are justified under the factors identified in *Vizcaino v. Microsoft Corporation*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).  In *Vizcaino*, the court discussed five factors that are relevant in determining whether proposed attorneys' fees in a common fund case are reasonable: (i) the results achieved; (ii) the risk of litigation; (iii) the skill required and the quality of work; (iv) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (v) awards made in similar cases. *Id*. at 1048-50.  Applying the *Vizcaino* analysis to this case, the requested 27.5% fee is reasonable.

### A.    The Results Achieved

The excellent results achieved in the Settlement support Class Counsel's request for attorneys' fees.  Here, Class Counsel negotiated a cash settlement of up to $1,632,883.09 for a Class of current and former California Field Service Technician employees of Defendant.  As a part of the Settlement, the State of California will receive $10,000.00 for education and enforcement of labor laws.  These are significant

---

[5] In order to obtain the excellent result in this case, Class Counsel were required to expend considerable time and resources in the successful prosecution of this action. Class Counsel's fees incurred in prosecuting this action on a pure hourly basis, at rates that do not account for the contingent nature of the case or the benefit conferred, total $415,870.00, an amount comprised of 988.05 hours of professional time.  Dente Decl., ¶18; Meservy Decl., ¶19; Robbins Decl., ¶17.  Thus, even if a Lodestar cross-check is utilized, the fees requested by Class Counsel are very reasonable, requiring a multiplier of less than 1.08.

benefits for both the Class Members and the State of California.  Meservy Decl., ¶11; Dente Decl., ¶10; Robbins Decl., ¶9.

## B.    The Risks of Litigation

Class action lawsuits carry a tremendous amount of risk, both on certification and liability.  From the outset of this Litigation, Defendant denied each of Plaintiff's allegations and offered legal and factual grounds in defense of this action. Specifically, Defendant claimed that it properly paid each of its Field Service Technicians for all compensable travel, properly calculated overtime rates to account for overtime on bonuses, and did not interfere with meal and rest entitlements as those entitlements were recently defined by the California Supreme Court's ruling in *Brinker Restaurant Corporation v. Superior Court*, 53 Cal. 4th 1004 (2012).  Considering the defenses available to Defendant, the fact that Class Counsel were able to negotiate a $1,632,883.09 Settlement is an outstanding achievement.  Meservy Decl., ¶6; Dente Decl., ¶5; Robbins Decl., ¶4.

## C.    The Skill Required and the Quality of the Work

Practice in the narrow area of wage-and-hour class litigation requires knowledge and skill of the constantly evolving substantive law as well as the procedural requirements of class action litigation.  The issues presented in this case, including Plaintiff's claims regarding compensation for travel in employer-owned vehicles where some degree of employer control exists, required more than just a general appreciation of wage-and-hour law and class action procedure.  The case law regarding compensation for controlled "commute" time is complex and still developing.  Further, this case involved matters that required significant expenditure of Class Counsel's time such as: (i) extensive pre-litigation investigation; (ii) extensive and detailed legal research into the substantive law of the causes of action at issue; (iii) developing and executing litigation strategies; (iv) propounding and responding to extensive discovery, including taking multiple depositions and defending Plaintiff's

deposition; (v) developing and executing mediation and settlement strategies; and (vi) analyzing detailed and extensive data and information exchanged between the Parties in order to assure that the Settlement's terms are based upon objective evidence that had been thoroughly considered in the context of the risks, expenses, and benefits of continuing to litigate the case.  Meservy Decl., ¶17; Dente Decl., ¶16; Robbins Decl., ¶15.

The quality of opposing counsel is also important in evaluating the quality of the work done by Class Counsel.  Here, Wargo & French LLP, a national law firm with extensive experience in employment and class action litigation, represented Defendant.  The ability of Class Counsel to obtain a favorable settlement in the face of this opposition reflects the superior quality of Class Counsel's work.

**D.     The Contingent Nature of the Fee**

From the outset of the case to the present, prosecution of this action has involved significant financial risk for Class Counsel.  Meservy Decl., ¶¶16-17; Dente Decl., ¶¶15-16; Robbins Decl., ¶¶14-15.  Class Counsel undertook this matter solely on a contingent basis with no guarantee of recovery.  *Id*.  Class Counsel placed their own resources at risk to prosecute this action with no guarantee of success.  *Id*.  The risks of this case are apparent in that class certification would have been a hard-fought issue, especially considering the uncertainty regarding certification of cases such as this.  Moreover, even if class certification were granted over Defendant's opposition, there was no assurance that Plaintiff would succeed at trial.  Meservy Decl., ¶18; Dente Decl., ¶17; Robbins Decl., ¶16.  For example, there was a possibility that Defendant could prove that it properly paid Plaintiff and Class Members for all compensable travel, properly calculated overtime rates to account for overtime on bonuses, and did not interfere with meal and rest entitlements as those entitlements are defined by recent case law.  *Id*.  Despite such challenges, Class Counsel were able to persuade Defendant that it faced significant liability exposure such that it was willing

1    to pay $1,632,883.09 to settle this matter.  *Id.*

2    **E.    Awards Made in Similar Cases**

3    Class Counsel's request for an award of attorneys' fees equal to 33.33% of the

4    common fund obtained here is in line with attorneys' fees awarded in other common

5    fund settlements.  *See, e.g., Pac. Enter.*, 47 F.3d at 378-79 (affirming attorney's fee of

6    33% of the recovery); *Morris*, 54 Fed. App'x. at 663 (affirming fee award of 33% of

7    the recovery); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D.

8    Cal. 2010) (citing to five recent wage and hour class actions where federal district

9    courts approved attorney fee awards ranging from 30 to 33%); *Martin v. AmeriPride*

10   *Services Inc.*, No. 08CV440-MMA (JMA), 2011 WL 2313604, at *8 (S.D. Cal. June

11   9, 2011) (noting that "courts may award attorneys' fees in the 30–40% range in wage

12   and hour class actions that result in recovery of a common fun[d] under $10 million");

13   *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at

14   *8 (S.D. Cal. June 1, 2010) (approving attorney fee award of 33.33% of the common

15   fund and holding that award was similar to awards in three other wage and hour class

16   action cases where fees ranged from 30.3% to 40%); *De Stefan v. Frito-Lay, Inc.*, No.

17   10-cv-0112-DOC-MLG (C.D. Cal. Oct. 29, 2012) (awarding 33% fee on a $2 million

18   wage and hour class action); *Ingalls v. Hallmark Mktg. Corp.*, No. 08-CV-04342-

19   VBF-E (C.D. Cal. Oct. 16, 2009) (awarding 33.33% fee on a $5.6 million wage and

20   hour class action); *Birch v. Office Depot  Inc.*, No. 06-cv-01690- DMS-WMC (S.D.

21   Cal. Sept. 28, 2007) (awarding a 40% fee on a $16 million wage and hour class

22   action); *Rippee v. Boston Mkt. Corp.*, No. 05-cv-1359-BTM-JMA (S.D. Cal. Oct. 10,

23   2006) (awarding a 40% fee on a $3.75 million wage and hour class action).

24   **F.    No Class Member Objected to the Attorneys' Fee Award**

25   Class Counsel's intention to request payment of attorneys' fees equal to 33.33%

26   of the Gross Payment was clearly disclosed to each Class Member in the Court-

27   approved Class Notice.  As of the filing of this motion, not a single one of the 514

28

- 19 -

Class Members objected to Class Counsel's request for attorneys' fees.  Cunningham Decl., ¶15.  Class Members clearly approve the award of attorneys' fees.  Class Counsel respectfully request $450,000.00 in attorneys' fees, *which equals only 27.5%, not 33.33%*, of the $1,632,883.09 Maximum Settlement Amount.

## V.   CLASS COUNSEL'S REQUESTED REPAYMENT OF COSTS IS FAIR AND REASONABLE AND SHOULD BE APPROVED

In the course of this litigation, Class Counsel has incurred out-of-pocket costs totaling $14,117.51.  Robbins Decl., ¶18.  As demonstrated in the Robbins Decl., the incurred costs include court fees, mediation fees, copying fees, courier charges, legal research charges, telephone/facsimile fees, travel costs, and postage fees.  *Id.*  Such costs are appropriate for cost reimbursement in these types of cases.  *See, e.g., In re United Energy Corp. Sec. Solar Power Modules Tax Shelter Inv. Litig.*, No. CV 87-3962KN(GX), 1989 WL 73211, at *6 (C.D. Cal. 1989) (quoting Newberg, *Attorney Fee Awards* § 2.19 (1987)).

Class Counsel's intention to request repayment of its costs up to $15,000.00 was clearly disclosed to each Class Member in the Court-approved Class Notice.  As of the filing of this Motion, not a single one of the 514 Class Members objected to Class Counsel's request for repayment of costs incurred up to $15,000.00.  Cunningham Decl., ¶15.

The costs incurred by Class Counsel in this litigation benefited the Class Members.  In light of the litigation costs that Class Counsel needed to incur to prosecute this action and the positive reaction of Class Members, Plaintiff's cost request is reasonable and should be granted.

## VI.   THE REQUESTED CLASS REPRESENTATIVE ENHANCEMENT AWARD IS FAIR AND REASONABLE AND SHOULD BE FINALLY APPROVED

Plaintiff seeks a class representative enhancement in the amount of $7,500.00.  This enhancement is intended to recognize the time and efforts that Plaintiff spent on behalf of the Class Members as well as the risks Plaintiff assumed in acting as the

1   Plaintiff in this action.  Meservy Decl., ¶23; Dente Decl., ¶22; Robbins Decl., ¶22.

2   Plaintiff actively participated in this litigation, spending substantial time

3   participating in interviews, meetings and telephone consultations with Class Counsel

4   who required considerable information pertaining to Defendant's employment policies

5   and procedures.  Meservy Decl., ¶20; Dente Decl., ¶19; Robbins Decl., ¶19.  Plaintiff

6   also spent numerous hours gathering information in support of the claims and

7   responding to written inquiries from Class Counsel.  *Id*.  He directly assisted in

8   evaluating the information obtained from Defendant.  *Id*.  Plaintiff also sat for a full-

9   day deposition and responded to significant formal discovery requests.  *Id*.  This work

10  was undertaken in order to prepare the complaint, the amended complaint, to prepare

11  for mediation, the anticipated certification motion, and ultimately trial.  *Id*.

12  Employees are dependent on, and generally thankful for, their jobs, especially

13  given the current economic climate and soaring unemployment rate in California.

14  Meservy Decl., ¶21; Dente Decl., ¶20; Robbins Decl., ¶20.  Given these realities,

15  employees are particularly unlikely to jeopardize their future employment by

16  complaining, much less filing a class action lawsuit against their employers on behalf

17  of their fellow employees.  *Id*.  Plaintiff's willingness to sacrifice and set aside his own

18  personal interests for the benefit of the Class should be rewarded, both as just

19  compensation for his efforts and achievements in this case, and to encourage others to

20  stand up and object to employment practices they believe to be unlawful.  *Id*.

21  The potential financial risks are in and of themselves enough to dissuade many

22  if not most people from agreeing to act as a class representative.  Meservy Decl., ¶22;

23  Dente Decl., ¶21; Robbins Decl., ¶21.  Plaintiff also took the risk that this lawsuit

24  would have a negative impact on his future employment opportunities.  *Id*.  Plaintiff

25  also runs the risk that his prospective employers may run a background search,

26  including a search for court records that might reveal this lawsuit and his willingness

27  to file suit against his employer.  *Id*.  Suffice to say, this could certainly have a

28

negative impact on their future employment prospects. *Id.*

Plaintiff sacrificed his personal interests for the benefit of the class. Meservy Decl., ¶23; Dente Decl., ¶22; Robbins Decl., ¶22. By agreeing to file this case, Plaintiff assumed the risk of a judgment against him and personal liability for an award of costs to Defendant in the event of an adverse outcome. *Id.* In class action losses, the class representative is deemed the losing party and thus potentially liable for the prevailing party's costs.

While class representatives are potentially personally liable for all of the costs in an unsuccessful suit, they certainly do not reap all of the benefits in a successful one. Meservy Decl., ¶23; Dente Decl., ¶22; Robbins Decl., ¶22. Here, for example, Plaintiff is requesting $7,500.00 (0.46% of the gross benefits achieved). *Id.* Accordingly, a fair service fee is necessary to ensure that successful class representatives receive just compensation for their willingness to take on the full risks of a loss. *Id.*

The requested $7,500.00 class representative service award is fair and reasonable sum in light of Plaintiff's involvement and the result achieved. Meservy Decl., ¶24; Dente Decl., ¶23; Robbins Decl., ¶23. $7,500.00 is a mere 0.46% of the gross settlement amount. *Id.*

Equally significant is the fact that Plaintiff's intention to request class representative enhancement of $7,500.00 was clearly disclosed to each Class Member in the Court-approved Class Notice. As of the filing of this Motion, not a single one of the 514 Class Members objected to Plaintiff's request for a class representative enhancement of $7,500.00 for Plaintiff. Cunningham Decl., ¶15.

For the foregoing reasons Plaintiff's requested class representative enhancements are extremely reasonable and should be granted.

## VII.   THE COURT SHOULD APPROVE THE PAYMENT TO CPT

As a part of the preliminary approval process, this Court approved the hiring of

- 22 -

CPT as the Settlement Administrator.  CPT has performed all of its required duties to date and is committed to completing the claims administration process.  *See generally* Cunningham Decl.   CPT's total costs for the administration of the Settlement, including fees incurred and future costs for completion of administration, is estimated not to exceed $15,500.00.  Cunningham Decl., ¶23.  Plaintiff respectfully requests that this Court approve payment of CPT's actual total fees and costs incurred, up to $15,500.00, to account for the costs of administration as part of its final order approving the Settlement.

## VIII.  CONCLUSION

For all of the foregoing reasons, Plaintiff requests, and neither Defendant nor any Class Members oppose, that this Court (i) grant final approval of this Settlement; (ii) approve distribution of the settlement funds to the Class Members and the LWDA; (iii) approve Class Counsel's request for an award of $450,000.00 in attorneys' fees and $14,117.51 in costs; (iv) the request for class representative incentive award payment of $7,500.00 for Plaintiff; (v) and approve payment of up to $15,500.00 to CPT for administration fees and costs.

Dated:  October 10, 2013           Respectfully submitted,

          THE DENTE LAW FIRM
          ROBBINS ARROYO, LLP
          MESERVY LAW, P.C.


          By: s/Matthew S. Dente
              MATTHEW S. DENTE

          Attorneys for Plaintiff Marcus Gillespie and
          for Member of the Class and Subclasses

900951

1

## <u>CERTIFICATE OF SERVICE</u>

2   I, the undersigned, certify and declare that I am over the age of 18 years,

3 employed in the County of San Diego, State of California, and not a party of this

4 action.  My business address is 600 B Street, Suite 1900, San Diego, California 92101.

5   I hereby certify that on October 10, 2013, I electronically filed the foregoing

6 document with the Clerk of Court using the CM/ECF system which will send

7 notification of such filing to the e-mail addresses denoted on the Electronic Mail

8 Notice List.

9   I declare under penalty of perjury under the laws of the United States of

10 America that the foregoing is true and correct.  Executed on October 10, 2013, at San

11 Diego, California.

12

13       <u>s/Matthew S. Dente</u>
        Matthew S. Dente

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28